UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
UNITED STATES OF AMERICA,               )
                                        )
        v.                              )
                                        )
                                        )
STEVEN P. SABLE,                        )        CRIMINAL NO. 04-10365-GAO
                                        )
            Defendant.                  )
_____)

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO REVOKE DETENTION**

The United States hereby responds to Defendant Steven P. Sable's (the "Defendant")

Motion to Revoke Detention. In that Motion, the Defendant seeks review of Magistrate Joyce

London Alexander's denial of his Amended Emergency Motion for Review of Order of

Detention and to Establish Conditions of Release. For the following reasons, the Court should

deny the Defendant's request for release and, instead, order that the process of medical

designation to a BOP Facility begin. Should the Court determine that release is appropriate, the

Court should impose far more restrictive conditions of release than those proposed by the

Defendant (which consist of little more than personal recognizance).

**Procedural Background**

The Defendant's current motion to revoke the order of detention comes after three

emergency motions the Defendant filed before the magistrate in April 2005. In the first two

emergency motions, the Defendant claimed that an emergency medical situation existed that

required immediate attention and transfer to a BOP medical facility because, the Defendant

claimed, he was receiving improper medical attention while in custody at the PCCF. In the first

motion, the Defendant requested an order transferring him to the BOP Medical Facility at

Devens ("Devens") so that he could receive dialysis treatment.  The United States opposed an

order designating the defendant to Devens because, at the time, Devens did not have a bed

available for the Defendant, but recommended that the medical designation process begin so that

he could be placed in an appropriate medical facility in BOP.  The Defendant then filed a second

emergency motion requesting a transfer and, in the alternative, release.  In its response to the

Defendant's second emergency motion for a transfer, the United States stated, *inter alia*:

> The basis for the [second emergency] motion appears to rest upon the expense
> and burden placed on the Marshals and the Plymouth County Correctional
> Facility
> ("PCCF"). The United States does not oppose an order issued by the
> Court ordering a medical designation to a Bureau of Prison ("BOP")
> facility. (It does oppose an order directing him to a particular facility.)
> Once the medical designation process is underway, the BOP can assess the
> Defendant's needs and make an appropriate designation to a facility that
> can meet the Defendant's needs. The United States agrees that the process
> should begin immediately and, to the extent an Order for Medical
> Designation to a BOP Facility will facilitate that process, agrees that an
> order should issue forthwith.

Once the government agreed to have an order issue so that the medical designation process begin

immediately, however, the Defendant reversed his position.  He filed an "amended" emergency

motion stating that he no longer wanted a medical designation to a BOP facility at all.  Instead,

he stated that he wanted to be released and requested the following conditions: (a) "maintain

residence with his wife, Nancy Sable," (b) report by telephone to a local pretrial services officer,

(c) restrict travel to California and Massachusetts, and (d) abide by standard conditions of

pretrial release.

After a hearing, where Defendant's counsel appeared via telephone, the magistrate

denied the request for release.  In the order denying request for release, the magistrate stated that

the Defendant's medical needs were being met.  She further noted that, according to the United

States, the Defendant and his wife were estranged. She concluded that "not a modicum of evidence has been presented that compels the Court to release Mr. Sable."

In his current motion to revoke, the Defendant makes essentially the same request he made before the magistrate in his "amended" emergency motion. Specifically, he is requesting to be released to live with Nancy Sable. After complaining about the conditions at PCCF (specifically, the lack of television, newspapers, and contact with other inmates and the fact that the medical staff is both male and female), he asserts that it is "beyond comprehension" that he poses a flight risk in light of his need for dialysis.

### Detention Considerations

When the California magistrate originally ordered the Defendant be detained, the magistrate had before him the following information, *inter alia*:

- In July 2002, the Defendant pled guilty to a California state fraud offense (See Tab 1);

- On August 17, 2002, while on probation for the July 2002 offense, the Defendant committed another fraud offense (for which he eventually pled guilty) (See Tab 1);

- On April 2, 2003, an arrest warrant issued for the Defendant because (a) he had committed the second offense while on probation and (b) he had failed to report to his probation officer as required. As is stated in the application for a warrant:

> The probationer failed to report as directed on
> March 30, 2003. Contact was attempted at the
> "Guest House" in Santa Ana. The probationer left
> without paying and his cell phone has been

disconnected.  His whereabouts are unknown.  (See Tab 1);

- The Defendant had been arrested eventually in March 2004; by then, he had failed to report to his probation officer for approximately eleven months;

- The Defendant had no ties to Massachusetts;

- The Defendant had no ability to post a bond securing his appearance;

- The Defendant had no known source of legitimate income;

- The Defendant was arrested for the current federal offenses at a motel, where he appeared to be living (See Tab 2); and

- The Defendant's wife, Nancy Sable, had testified at the detention hearing that in the last three years (i.e., 2002-2004) she had *never* been separated from the Defendant and *never* had lived in a separate residence from him, which contradicted the Defendant's own earlier statements to his probation officer that they in fact were separated and maintained different residences.

The magistrate stated that the order of detention was appropriate:  "in light of his history on probation, what I can only deem to be an unstable residence [and] a lack of personal bail resources, I believe the government has demonstrated a serious risk of flight."  Particularly in light of the detailed allegations in the Indictment, the magistrate appropriately ordered the Defendant detained.

In seeking to have this Court revoke detention, the Defendant now relies on essentially two assertions.  First, he asserts that Nancy Sable can and will "without reservations" provide the

4

Defendant with a place to live.  Second, he asserts that the Defendant's required dialysis

removes any risk of flight.  Neither assertion provides a sufficient reason to release the

Defendant, particularly not on the conditions he now proposes.

To begin with, it is by no means clear that Nancy Sable can provide a stable residence for

the Defendant.  At the time of the arrest, the Defendant was living in a motel called the

"Huntington Suites." (See Tab 2)  Apparently, Nancy Sable is no longer at that location.  Instead,

according to her affidavit, Nancy is living at yet another address, one at which she has been

living only since January 2005 (not yet six months).  Moreover, the United States has substantial

question about the veracity of the information Nancy and the Defendant have provided about

their relationship.  On December 7, 2004, prior to arresting the Defendant, the FBI interviewed

the Defendant's California probation officer.  The memorandum of interview states, among other

things:

> [The probation officer] said that SABLE is separated from his wife
> now and lives alone.  [The probation officer] has been to SABLE's
> current residence and did not notice anything suspicious.  He did
> note that SABLE has not filed his federal income taxes [for] the
> last three (3) years.  (See Tab 3)

On April 25, 2004, following the magistrate's order denying the Defendant's requested release,

the IRS re-interviewed the probation officer, who reported that, on June 4, 2004, the Defendant

had appeared for an appointment and told the probation officer that he had been separated from

his wife for the past 4 months.  (See Tab 4)  The probation officer also stated that the Defendant

"said that he and his wife have separate residences and that his daughter also has a separate

residence."  Id.   The probation officer also had "observed SABLE's living quarters at the

HUNTINGTON SUITES and noted that SABLE appeared to live alone."  Id.   The probation

officer also said that he had several meetings with the Defendant after the June 2004 appointment (including one as late as December 6, 2004) and that the Defendant never told him that he was back together with his wife.  Id.  This information contradicts the testimony Nancy Sable gave at the detention hearing.

As for the issue of dialysis, the United States does not dispute that the Defendant is in need of dialysis.  That fact alone, however, does not make release appropriate, particularly where, as is the case here, the Defendant does not have a stable residence, stable family ties, stable employment or ties to the District of Massachusetts.  As the allegations in the Indictment detail, the Defendant is facing very serious fraud charges.  With his past record of fraud, the Defendant is facing a substantial period of imprisonment if convicted.  And as his record in California shows, he also has a history of disappearing when he believes it to be in his interest. The fact that the Defendant is now a dialysis patient does not, by itself, ensure that he will appear as required in Massachusetts to face these charges.  While it might make it easier to locate him should he not appear, the fact that he is a dialysis patient does not limit his ability to move or travel to different parts of the country.  Indeed, the dialysis provider mentioned by the Defendant in his filing (Gambro) has facilities throughout the U.S.

The far more prudent course in this matter is to begin the process of medical designation to a BOP facility so that the Defendant can receive the dialysis treatment he requires in a BOP facility.  This will ease the burden on the U.S. Marshals, ensure that the Defendant receives the medical treatment he now needs, and protect the interests of the United States in having the Defendant appear as required.  While the United States is not in a position to make any representations as to when a particular dialysis bed for this Defendant will become available, it is

in the interest of all that an order be issued and the process begin immediately so that he can be placed in an appropriate facility as soon as possible.

Should the Court disagree with the United States and order that the Defendant be released to live with Nancy Sable, the United States believes that the Court should set more restrictive conditions than those proposed by the Defendant.  At a minimum, the Defendant should be placed on home detention with electronic monitoring and be prohibited from conducting any financial transactions over $500 without prior approval.  Accordingly, should the Court order release on conditions, the United States requests the following:

1. Home detention with electronic monitoring, with travel away from home allowed solely for purposes of receiving dialysis and required medical treatment.

2. No financial transactions over $200 without prior approval of Pretrial Services.

### Conclusion

For the reasons stated above, the United States requests that the Court deny the Defendant's motion to revoke detention.  The United States further requests that the Court issue an Order of Medical Designation to a BOP Facility.  In the alternative, the United States requests that the Defendant be placed on home detention with electronic monitoring, with travel away from home allowed solely for purposes of receiving dialysis and required medical treatment and other conditions set forth above.

7

MICHAEL J. SULLIVAN
United States Attorney


**/s/ Jack W. Pirozzolo**
Jack W. Pirozzolo
Assistant U.S. Attorney
U.S. Attorney's Office
U.S. Courthouse, Suite 9200
1 Courthouse Way
Boston, MA 02210

Date: May 23, 2005

## CERTIFICATE OF SERVICE

I, Jack W. Pirozzolo, hereby certify that on May 23, 2005, I served a copy of the foregoing by electronic filing on counsel for the defendant.

**/s/ Jack W. Pirozzolo**
Jack W. Pirozzolo

8

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ORANGE, HARBOR JUSTICE CENTER, NEWPORT BEACH FACILITY

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA | ) | DEPT H-2 |
| Plaintiff | ) | **FILED** |
| vs. | ) | A-283459 SUPERIOR COURT OF CALIFORNIA |
| | ) | COUNTY OF ORANGE |
| | ) | Court No. CENTRAL JUSTICE CENTER |
| SABLE, Steven Paul | ) | PETITION FOR |
| D.O.B. 05-15-47        Probationer | ) | WARRANT APR 0 2 2003 |

TO THE HONORABLE JUDGE OF THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF
ORANGE:

ALAN SLATER, Clerk of the Court
D. Leslie

Your petitioner respectfully represents that on July 3, 2002 the above-named probationer was found guilty of the
violation of Sections Count 1: 487(d) PC; and Count 3: 476(a) PC in the Superior Court of California, County of
Orange.

That afterwards, on July 3, 2002, imposition of sentence was suspended and he was placed on probation by said
Court for the term of three years for said crime.  Custody time served on this case totals 90 days with credit for
time served of 21 days.  **FIRST VIOLATION**

**CURRENT GRANT EXPIRATION DATE, 07-02-2005**

That since being placed on probation, the probationer has violated the terms of said probation by:

1. Specific Condition: "Obey all laws"
   On August 17, 2002, the probationer rented a hotel room at the Residence Inn in Fountain Valley.  After
   staying 109 nights, he left the hotel without paying for the last 25 nights.  The total loss was approximately
   $2,728.68.  Fountain Valley Police Department has filed DR# 02-5931, alleging violation of Section 487(a)(1)
   PC.

2. Specific Condition: "Comply with usual terms and conditions of probation - reporting"
   The probationer failed to report as directed on March 20, 2003.  Contact was attempted at the "Guest House"
   in Santa Ana.  The probationer left without paying and his cell phone has been disconnected.  His whereabouts
   are unknown.

WHEREFORE, your petitioner prays that probation be revoked and that a warrant be issued for the arrest of said
probationer and that he be brought before this Court to be dealt with as provided by law.  I declare under penalty of
perjury that the foregoing is true and correct.

Done this 28th day of March, 2003, in Santa Ana, California.

STEPHANIE LEWIS
Chief Probation Officer

By _____
Mike M. Takasuye : mgm          Deputy Probation Officer

## ORDER OF THE COURT

It is the Order of the Court that probation in the above case be revoked and that a warrant be issued for the arrest of
said probationer.

Dated  4/2/03    Bail Amount  No BAIL

_____
Judge of the above-entitled Court

## PETITION FOR WARRANT OF ARREST

**PETITION FOR WARRANT OF ARREST**

Page 2

SABLE, Steven Paul
Court No. 02HF0783; A-283406 

## EVALUATION

Appearing before the Court is 55-year-old, Steven Sable. He has no prior record ad no previous violations; however, he has committed new law violations and absconded probation supervision. At this time, a moderate commitment to Orange County Jail would serve as an appropriate consequence.

## RECOMMENDATION

In view of the foregoing, it is respectfully recommended that probation be revoked and a warrant be issued for the probationer's arrest. Should the probationer appear in Court in the near future and request a disposition, it is respectfully recommended that the probationer be found in violation of probation, that probation be revoked and reinstated, with the added condition that he serve 60 days in custody.

It is further recommended that pursuant to Section 29550.2 of the Government Code, the probationer be ordered to reimburse the County of Orange for the Criminal Justice Administration Fee (booking fee) through, and as directed by, the Probation Officer in the amount of $158.00.

**STATE OF CALIFORNIA**
THE PEOPLE OF THE STATE OF CALIFORNIA
VS. Steven Paul Sable

**WARRANT OF ARREST**

**COUNTY OF ORANGE**
Central JUSTICE CENTER

**NAME OF Defendant**    DLN: D3639869    STATE: CA    CASE NO: 02M60783    DR NO:

**RESIDENCE ADDRESS**    BIRTHDATE 06/15/47    Tracking Number: 2019856    Person Number: 1221845
1280 Bison
Newport Beach, CA 92660 USA    **VIOLATION(S)**    AKA Steven P Sable

**BUSINESS ADDRESS**    PC   487(d)    **OFFENSE LEVEL:** Felony
                        PC   476(a)    **AGENCY:** NB
                                       **VIOLATION DT:** 04/23/02
                                       **CONVICTION DT:** 07/03/02
                                       **FILE DT:** 06/20/02
                                       **WARRANT DT:** 04/02/03

| INDEX TYPE | INDEX NUMBER | | | | |
|---|---|---|---|---|---|
| SSN | 132364664 | SEX | Male | HT | 5 ft. 10 in. |
| FBI | | HAIR | Gray | WT | 235 |
| CII | | EYES | Hazel | RACE | White |

| VEH LIC NO | STATE | VEH YEAR | MAKE | MODEL | STYLE | COLOR |
|---|---|---|---|---|---|---|
| | | | | | | |

The people of the State of California, to any peace officer of the State:

A verified Complaint was made before me on this date that the offense set forth above was committed, and accusing the defendant, named and described above.

You are ordered to arrest the defendant forthwith and bring Steven Paul Sable before me, or in the case of my absence or inability to act, before the nearest or most accessible magistrate in this county.

Warrant of Arrest

JUDGE: Didier, Daniel J.

NO BAIL

☐ Bail/No Release per 853.6 PC    ☐ 1275.1 PC Order

**Defendant to be transported to Central Justice Center for court appearance**

You are commanded forthwith to arrest the Defendant and bring him before a judge of the above entitled court, or if arrested in another county, before a magistrate of that county if so requested by the Defendant.

If the offense charged is a misdemeanor, this warrant may be served between 6 a.m. and 10 p.m. unless endorsed for night service or any time if served in a public place.

The Defendant is to be admitted to the above bail amount including penalty assessment if applicable.

I declare under penalty of perjury that the following is true and correct to the best of my information and belief.

Executed in Orange County on  4-2-03  at  2:00 AM/PM

_____
~~Magistrate or Clerk~~

☑ For good cause shown, I direct this warrant may be served at any hour of the day or night.

_____
Signature of Magistrate for night service





Home
· Contact
Us

Welcome

# Huntington Suites

**727 Yorktown Avenue**
**Huntington Beach, CA 92648**
**714-969-0450**

## For More Information, Call Us Today.

Leslie Zahedi

**Huntington Suites**

727 Yorktown Avenue

Huntington Beach, CA 92648

Phone: 714-969-0450.



POWERED BY VERIZON SUPERPAGES.COM®

SIGN IN ▶



FD-302 (Rev. 10-6-95)

**COPY**

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription   12/10/2004

    MIKE TAKESUYE, Orange County Probation Officer, was contacted at his office telephone 714-569-2287.  TAKESUYE was advised of the identity of the interviewing Agent, and thereafter furnished the following information:

    TAKESUYE is SABLE's Probation Officer.  He stated that SABLE is now living at 727 Yorktown Ave., Apt. # 224, Huntington Beach, CA 92646, phone number 714-642-1502.

    TAKESUYE did not want to call SABLE into his office to affect the arrest.  He said that he had just seen SABLE yesterday and that it would be highly suspicious if he called SABLE into his office again.  TAKESUYE also stated that he did not wish to take part in the arrest.

    He said that SABLE may claim to be having heart problems when we arrest him.  TAKESUYE said that SABLE was on heart medication but that SABLE exaggerates his condition.  He further noted that SABLE is very manipulative.

    He said that SABLE is separated from his wife now and lives alone.  TAKESUYE has been to SABLE's current residence and did not notice anything suspicious.  He did note that SABLE has not filed his federal income taxes fro the last three (3) years.

| | | | |
|---|---|---|---|
| Investigation on | 12/07/2004 | at Santa Ana | (telephonically) |
| File # | | Date dictated | 12/10/2004 |
| by | SA Kevin Robert Armstrong   *KRA* | | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

## Internal Revenue Service
## Criminal Investigation

# Memorandum of Conversation

---

**In Re:**    Steven SABLE                    **Location:**    TELEPHONE
                                                              714-569-2287

**Investigation #:**
**Date:**    April 25, 2005
**Time:**
**Participant(s):**    MIKE TAKESUYE

                    Ann M. Cotellesso, Special Agent

I contacted TAKESUYE at the above telephone number.    TAKESUYE stated that on June 4, 2004, SABLE came in for his regular appointment.  During a discussion of SABLE's case plan and restitution payments, SABLE told TAKESUYE that he was separated from his wife. SABLE stated that they had been separated for the last four months, but that they were on speaking terms.

SABLE said that he and his wife have separate residences and that his daughter also has a separate residence.

TAKESUYE had observed SABLE's living quarters at the HUNTINGTON SUITES and noted that SABLE appeared to live alone.

Subsequent to this June appointment, SABLE had several other meetings with TAKESUYE. SABLE never told TAKESUYE that he was back together with his wife.

The last time SABLE came to report to TAKESUYE was December 6, 2004.  At that time, SABLE signed a document to set up an official restitution plan.

*Ann M. Cotellesso*
Ann M. Cotellesso
Special Agent